SACHS v. KAROS.

CLAIM OF MANOS.

1. RECEIVERS—BURDEN OF ESTABLISHING CLAIMS.
   One claiming that firm for which a receiver has been appointed is the claimant's debtor has the burden of establishing his claim.

2. SAME—GENERAL CLAIM AGAINST PARTNERSHIP—EVIDENCE.
   Record on claimant's petition for allowance of a general claim against receiver for partnership *held*, not to have established claimant as a general creditor of the partnership although it may be claimant may have a claim against one of the partners or another person who had had dealings with the firm.

Appeal from Wayne; Maher (Thomas F.), J. Submitted January 15, 1946. (Docket No. 19, Calendar No. 43,172.) Decided March 4, 1946.

In the matter of the receivership in case of Sachs v. Karos. Paul Manos presented his claim for $3,850. Claim denied. Claimant appeals. Affirmed.

*Crawford S. Reilley,* for claimant.

*Isadore Starr,* for receiver.

STARR, J. This case involves one angle of the complicated affairs of the Karos Tool & Manufacturing Company of Detroit, and our opinions in *Equitable Trust Co.* v. *Karos,* 309 Mich. 565, and

*Sachs* v. *Karos,* 310 Mich. 577, should be read in preface to this opinion.

In August, 1940, Ernest Sachs filed a bill of complaint in the Wayne circuit against Sam Karos and others, doing business as copartners under the name of Karos Tool & Manufacturing Company, and in the course of that litigation the Equitable Trust Company was appointed receiver of the Karos Company. In July, 1941, the receiver filed bill of complaint against Sam Karos and others to determine title to a grinding machine and a milling machine, which one John Silaides claimed to own but which were located in the Karos Company's plant. In that case the trial court determined that the machines belonged to the Karos Company, and in affirming this holding in *Equitable Trust Co.* v. *Karos, supra,* we said (pp. 570, 571):

"Silaides admits he did not have the money to pay for the machines and claims to have borrowed it from Karos, Mrs. Karos, and others interested in the company. We need not decide whether the purchase money came from one of the numerous so-called 'kitties' organized by Karos out of funds of the company, or of its copartners, to conceal the real financial setup of the company. The manipulations of financing fully justify the finding of the court below that the company, not Silaides, was the real purchaser of the machines. * * * His (Silaides') explanation of the entire transaction borders on the improbable."

In the case of *Sachs* v. *Karos, supra,* the trial court determined the respective interests of the several partners in the Karos Company, and in affirming that determination we said (pp. 580, 584):

"Manos (claimant in the present appeal) defaulted in his payments and never asserted any interest thereafter in the partnership. * * *

"Among other frauds perpetrated on the other partners by Karos was the transfer to his friend John Silaides, a stranger to the business of the partnership, of two machines very valuable and necessary to carry on its activities. These machines were purportedly leased by Silaides to Karos, thus giving Karos direct control of some essential equipment in the partnership business. The testimony shows these machines were purchased in part with partnership money and in part by moneys advanced by some of the partners for purposes of the partnership. * * * On appeal of a distinct and separate chancery case, *Equitable Trust Co.* v. *Karos,* 309 Mich. 565, we held that by this purchase in the name of Silaides, Karos committed a fraud on the partnership."

Subsequently Paul Manos filed a petition with the Equitable Trust Company, as receiver of the Karos Company, for allowance of a general claim in the amount of $3,850 for money which he alleged he loaned Silaides in connection with the purchase of the above-mentioned machines. Testimony was taken, and an order was entered denying his petition. He appeals from this order, contending that the trial court erred in denying his petition.

The burden was on Manos to establish his claim. He testified that he was originally a partner in the Karos Company and that he had one share, which he sold to Sam Karos for $2,200. He further said in substance that from time to time he loaned Sam Karos sums of money aggregating $3,850 and that he instructed Karos to give this sum to Silaides to be used in purchasing the two machines. He testified in part:

"*Q.* * * * Can you testify as a fact as to the various loans which you made to Mr. Karos?
"*A.* Yes, I can. * * *

"The original loan was $2,200 and I give it back to him; then there was $500 that he paid me at the time he. * * * bought the share, which was $1,700, and Braley (a partner in the Karos Company) * * * wanted $500 and I give it to him; that made $2,200 again and I gave Sam $500 again in his office; that made $2,700; then there was a time we bought two guns; I went home and got the money out of the bank and I borrowed $100 from, Sam to buy those guns; that brought the balance to $2,550; then I bought a set of tires for his car at the time I bought a set of tires for my car, that cost me $32 for my tires, so he deducted $32 from the total amount I had at the time, $2,518. * * *

"Then I give him $700 cash, and I give him $632 at the shop one day at Packard Motor, which made a balance of $3,850, and then there was $216 I give him since. * * *

"*Q.* Did you have some conversation with him (Silaides) in reference to this money that Sam Karos owed you?

"*A.* Yes, sir. * * *

"The conversation was at my home and he wanted to borrow some money. * * * I told him I didn't have the ready cash, the amount he wanted to borrow; that Mr. Karos owed me $3,850 and I might be able to get it from him. We got in the car and went over to Mr. Karos' office. After I got over there I had a talk with Mr. Karos. * * *

"I asked him if he would give this money to Mr. Silaides and Sam said he would. That is all there was.

"*The Court:* Do I understand correctly Sam Karos advanced the amount of $3,850 to John Silaides?

"*A.* Yes. * * *

"*Q.* Did you learn what that money was to be used for? * * *

"*A.* To purchase two Cincinnati machines. * * *

"I know the machines went into the Karos plant."

On cross-examination Manos testified in part:

"It is my claim that in 1940 Sam Karos owed me $3,850 and I went to Sam Karos and told him to pay that money to John Silaides. I wasn't present when Sam Karos gave Silaides the money. I haven't any personal knowledge that Karos gave Silaides the money except that Karos told me he did and John said that he received it from him. It was deposited in John Silaides' account in the bank account; *that money is now owed me by John Silaides.*

"*Q. Who owes you this money today, Karos or Silaides?*

"*A. This money is owed me by John Silaides.*
 *   *   *

"*Q.* And you are looking to Silaides to repay you that money?

"*A.* · I want to get the money from whoever got the machinery.    *   *   *

"*Q. Did Silaides promise to pay you this money?*

"*A. He said he would give it back to me.*

"*Q.* But he has not paid it?

"*A.* No.

"*Q.* Therefore he still owes it to you?

"*A.* Whoever owes me the money that bought the machines.    *   *   *

"*Q. Mr. Manos, when you told Mr. Karos to give the money to Silaides, you did not know at that time what Silaides wanted the money for?*

"*A. No.*"

In reviewing this case *de novo,* we have examined not only the record before us but also the records and our opinions in *Equitable Trust Co.* v. *Karos, supra,* and *Sachs* v. *Karos, supra.* Manos bases his claim on the ground that Sam Karos owed him $3,850, that he instructed Karos to give this sum to

Silaides, and that Silaides used the money in connection with the purchase of two machines. However, Manos testified that he did not know at that time what Silaides wanted the money for. The mere fact that Silaides or Karos may have used his money in connection with the purchase of the machines does not establish his claim as a general creditor of the Karos Company. Manos may have a claim against Silaides or Karos for money loaned to them, but from the record before us we are convinced that he failed to establish his claim as a general creditor of the Karos Company.

The order of the trial court denying Manos' petition is affirmed. The receiver or its successor may recover costs of both courts.

BUTZEL, C. J., and CARR, BUSHNELL, SHARPE, BOYLES, REID, and NORTH, JJ., concurred.